UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

JENNY L. MARTIN                                                                                                    PLAINTIFF

      VS.                            Civil No. 3:14-cv-03070-MEF

CAROLYN W. COLVIN,                                                                                         DEFENDANT
Commissioner of Social Security Administration

# MEMORANDUM OPINION

Plaintiff, Jenny L. Martin, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claim for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act (hereinafter "the Act"). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

## I.     Procedural Background:

Plaintiff filed her applications for DIB and SSI on January 20, 2012, alleging an onset date of January 25, 1985, due to a congenital hearing impairment and issues regarding reading comprehension. (T. 205) Plaintiff's applications were denied initially and on reconsideration. (T. 56-58, 59-62, 65-66, 67-68) Plaintiff then requested an administration hearing, which was held via teleconference where the Plaintiff was located in Harrison, Arkansas and the Administrative Law Judge ("ALJ"), Hon. Clifford Shilling, was located in Fort Smith, Arkansas on April 30, 2013. Plaintiff was present and represented by counsel.

At the time of the hearing, Plaintiff was 28 years of age with a 12th grade special education. (T. 207, Doc. 11 p. 1) Plaintiff requested, and the ALJ approved, an amended onset date of

February 15, 2012. (T. 26-27) Plaintiff's past relevant work experience included working as a retail cashier from October 2007 to February 15, 2012, and a stocker from January 2005 to November 2007. (T. 192-193)

On July 11, 2013, the ALJ found Plaintiff's hearing disorder (diminished hearing), mental disorder (cognitive disorder), and mental disorder (mood disorder-depression) severe. (T. 12) Considering the Plaintiff's age, education, work experience, and the residual functional capacity ("RFC") based upon all of her impairments, the ALJ concluded Plaintiff was not disabled from January 25, 1985, through the date of his Decision issued July 11, 2013. The ALJ determined Plaintiff had the RFC to perform a full range of work at all exertional levels, but with the following non-exertional limitations: Plaintiff must avoid jobs that required excellent hearing ability or verbal or telephone communication. Plaintiff was able to perform work that required only occasional hearing, where there was incidental contact with others, and the tasks were simple and learned by rote. (T. 15)

Plaintiff appealed this decision to the Appeals Council, but said request for review was denied on May 23, 2014. (T. 1-3) Plaintiff then filed this action on July 10, 2014. (Doc. 1) This case is before the undersigned pursuant to consent of the parties. (Doc. 8) Both parties have filed briefs, and the case is ready for decision. (Doc. 11 and 12)

## II.  Applicable Law:

This court's role is to determine whether substantial evidence supports the Commissioner's findings. *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Teague v. Astrue*, 638 F.3d 611, 614 (8th Cir. 2011). The Court must affirm the ALJ's decision if the record contains substantial evidence to support it. *Blackburn v.*

*Colvin,* 761 F.3d 853, 858 (8th Cir. 2014).  As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently.  *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015).  In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the Court must affirm the ALJ's decision.  *Id.*

A claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity.  *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).  A plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits:  (1) whether the claimant has engaged in substantial gainful activity since filing his or her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his or her age, education, and experience.  *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  Only if he reaches the final stage does the fact finder consider the Plaintiff's age, education, and

work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

### III.  Discussion:

The Court must determine whether substantial evidence, taking the record as a whole, supports the Commissioner's decision that Plaintiff had not been disabled from the amended onset date of February 15, 2012, through the date of the ALJ's Decision issued July 11, 2013. Plaintiff raises four issues on appeal, which can be summarized as: (A) the ALJ erred in step-three of his analysis; (B) the ALJ failed to consider the combined effects of Plaintiff's impairments; (C) the ALJ erred in his RFC determination; and, (D) the ALJ's Decision was not supported by substantial evidence. (Doc. 11, pp. 7-13)

The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs and the ALJ's opinion, and they are repeated here only to the extent necessary.

**Step-three Analysis:**

Plaintiff argues the ALJ erred in step-three of his analysis. (Doc. 11, pp. 7-10) The Court agrees.

**A. Listing Requirements:**

While the ALJ considered whether Plaintiff met the listing of § 12.02 and § 12.04 (T. 13-15), Plaintiff argues he failed to consider whether Plaintiff met the requirements under listing § 12.05(C), entitled Intellectual disability. (Doc. 11, pp. 10-12)

Intellectual disability refers to a "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. Part 404,

4

Subpart P, Appendix I, Section 12.05. Plaintiff argues she met the listing requirement of subpart C, which "required her to have a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." *Id.* at (C).

In reviewing the records there was evidence that Plaintiff's mental impairment developed prior to her being 22 years of age. Plaintiff alleged in her application she had trouble with reading comprehension. (T. 205) She attended special education classes and had speech therapy throughout school. (T. 28, 35) Plaintiff had difficulty pronouncing words, even with the use of hearing aids, because she pronounced them the same way she heard them. (T. 34-35)

Dr. Nancy A. Bunting, state agency medical consultant, performed an intellectual assessment and adaptive functioning examination on February 29, 2012. (T. 305) Dr. Bunting observed Plaintiff's "speech often had poor articulation, especially at the end of words, but was coherent." (T. 306) Plaintiff's prosody was flattened due to her hearing impairment. (T. 306) Plaintiff's eye contact was poor and she stared at the examiner as though she were reading Dr. Bunting's lips. (T. 307) Dr. Bunting indicated she had to speak loudly for the entire testing, even though Plaintiff wore a hearing aid. (T. 307) Plaintiff had a difficult time understand Dr. Bunting at times. She understood 'acres' instead of 'anchor' and she could not understand Dr. Bunting when she said 'carrots.' Plaintiff appeared to put forth a consistent and good level of effort on the tests, and her persistence was good. (T. 307) Dr. Bunting observed Plaintiff's pace was "slow, especially on the verbal subtests where she was very hesitant and had long pauses." (T. 307) Dr. Bunting administered a Wechsler Adult Intelligence Scale IV and determined Plaintiff's full scale IQ was 67, which fell in the mild range of mental retardation. (T. 305, 307) Dr. Bunting diagnosed Plaintiff

with cognitive disorder, not otherwise specified; hearing impaired, anemic; and, assessed a global assessment of functioning "GAF" score of 48-58. (T. 307)

Dr. Bunting determined Plaintiff had the following effects of identified mental impairments on adaptive functioning. Plaintiff could do all self-care, she drove a car, used a checkbook, counted change, performed regular household chores, shopped for groceries, took care of animals, spent time with her children, watched television, and read books. (T. 308) Plaintiff was not able to communicate and interact in a socially adequate manner due to her hearing impairment. She could only communicate in an intelligible and effective manner about concrete matters. Plaintiff had the limited capacity to cope with the typical mental/cognitive demands of work-like tasks. She functioned in the mild range of mental retardation and her scores were generally quite even. Plaintiff had the very limited ability to attend and sustain concentration on basic tasks. She was able to do so in a "structured testing situation and she c[ould] do so in the routine setting of her present job as a cashier." (T. 308) The Plaintiff was "able to sustain her persistence during the testing session and interview, which focused on herself. Her frustration tolerance appeared to be adequate." (T. 308) The Plaintiff had some ability to complete work-like tasks within an acceptable time frame. (T. 308)

The evidence from Plaintiff's childhood of being in special education classes and speech therapy, coupled with Dr. Bunting's findings of mild mental retardation, showed Plaintiff's mental impairment probably developed prior to her turning 22. Mental retardation is usually first diagnosed in childhood or adolescence; however, sometimes it is not diagnosed until adulthood. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorder* 39 (4th ed., Text Revision, 2000) ("DSM IV-TR"). Mental retardation is not normally a condition that improves with age, thus, in the absence of any evidence of a change in a claimant's intellectual

6

functioning, a person's IQ is presumed to remain stable over time. *See, e.g., Muncy v. Apfel*, 247 F.3d 728, 734 (8th Cir. 2001); *Branham v. Heckler*, 775 F.2d 1271, 1274 (4th Cir. 1985) (absent contrary evidence, an IQ test taken after the insured period correctly reflects claimant's IQ during the insured period); *Guzman v. Bowen*, 801 F.2d 273, 275 (7th Cir. 1986) (claimant had low IQ during onset of disability in 1979 rather than just when first IQ tested in 1982); *Luckey v. Department of Health & Human Servs.,* 890 F.2d 666, 668-69 (4th Cir. 1989) (ALJ may assume claimant's IQ remained relatively constant in absence of evidence showing a change in claimant's intelligence functioning). *See also Sird v. Chater*, 105 F.3d 401, 402 n. 4 (8th Cir. 1997).

Remand is necessary in order for the ALJ to assess whether the onset of Plaintiff's mild mental retardation began prior to her 22nd birthday. On remand, the ALJ is directed to contact Dr. Bunting to determine the onset of Plaintiff's mild mental retardation. Once the ALJ has determined whether Plaintiff's mild mental retardation inception was prior to age 22, he should then analyze whether Plaintiff met the listing requirement of § 12.05(C), which "required her to have a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function," i.e. her hearing impairment.

**B. <u>Paragraph B Analysis:</u>**

There are three steps used in evaluating whether a Plaintiff's mental impairment is severe. In applying the special technique, the ALJ must first evaluate Plaintiff's symptoms, signs, and laboratory findings to determine whether Plaintiff had a medically determinable impairment. Once the ALJ has established Plaintiff has a medically determinable impairment, the ALJ must rate the functional limitation using four broad functional areas: activities of daily living; social functioning; concentration, persistence, and pace; and, decompensation. The ALJ is to rate the degree of functional limitation in the first three areas as none, mild, moderate, marked, and extreme. The

ALJ will rate decompensation as none, one or two, three, four or more. After rating the Plaintiff's functional limitation resulting from Plaintiff's impairment, the ALJ determines the severity of the Plaintiff's impairments. If the ALJ rates the degree of claimant's limitation in the first three functional areas as "none" or "mild" and "none" in the fourth area, we will generally conclude that claimant's impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(b)-(d), 416.920a(b)-(d).

The ALJ determined Plaintiff's medically determinable impairments were hearing disorder (diminished hearing), mental disorder (cognitive disorder), and mental disorder (mood disorder-depression. (T. 13) The ALJ opined Plaintiff's mental impairments, considered singly and in combination, did not meet or medically equal the criteria of listing 12.02 and 12.04. (T. 13) In making this finding the ALJ noted he considered the "paragraph B" criteria mentioned above. (T. 13) Upon review of the record, the Court finds substantial evidence did not support the ALJ's consideration of the "paragraph B" criteria.

In addition to Dr. Bunting's consultative examination, Dan Donahue, Ph.D., a non-examining state agency consultant, reviewed the record on March 6, 2012 and performed a mental RFC assessment. Dr. Donahue determined Plaintiff was moderately limited in her ability to understand and remember detailed instructions; maintain attention and concentration for extended periods; complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and, interact appropriately with the general public. (T. 311) Dr. Donahue noted Plaintiff had moderate limitations in maintaining social functioning and concentration, persistence, or pace. (T. 325) Dr. Donahue opined Plaintiff was able to perform work where interpersonal contact was

incidental to work performed; complexity of the tasks was learned and performed by rote, few variables, little judgment; and, supervision required was simple, direct, and concrete (unskilled). (T. 314)

In his analyzation of "paragraph B" criteria, the ALJ determined Plaintiff had mild restrictions regarding her daily activities and social functioning, and moderate difficulty regarding her concentration, persistence, or pace. (T. 14) Although the ALJ gave substantial weight to both Dr. Bunting's and Dr. Donahue's findings (T. 16), he failed to explain why he differed from both doctors' findings that Plaintiff had moderate limitations regarding her concentration, persistence, or pace in his "paragraph B" analysis. (T. 308, 325) Specifically, Dr. Bunting found Plaintiff was not able to communicate and interact in a socially adequate manner due to her hearing impairment. She could only communicate in an intelligible and effective manner about concrete matters. Plaintiff had the limited capacity to cope with the typical mental/cognitive demands of work-like tasks. She functioned in the mild range of mental retardation. (T. 307-308)

Plaintiff had a very limited ability to attend and sustain concentration on basic tasks. Yet, the ALJ determined Plaintiff was only mildly limited in the area of social functioning because she lived with her husband and two children; and, maintained contact with family members, had friends, and, communicated with neighbors. (T. 14) The ALJ noted he considered the medical evidence of record and the testimony of the Plaintiff as "favorably to the claimant as can reasonably [be] done under the extant facts and circumstances" (T. 14); however, Plaintiff testified she could not understand her coworkers or customers at her other job; she did not like to go into stores by herself because she did not like being by herself without being able to hear everything; and, she did not know what was behind her and feared someone sneaking up behind her. (T. 36-37)

9

While the ALJ gave lip service to both Dr. Bunting and Dr. Donahue by noting substantial weight was given to their opinions, the evidence clearly shows the ALJ's "paragraph B" determination was not medically based, and remand is necessary. On remand the ALJ is directed to reassess Plaintiff's "paragraph B" determination based up Dr. Bunting's and Dr. Donahue's opinions, taking into account Plaintiff's testimony, Function Reports, and medical evidence.

**RFC Determination:**

Plaintiff argues the ALJ erred in his RFC determination by not taking into consideration the Plaintiff's total medical condition and eligibility to meet or equal the requirements of the Listing of Impairments of 20 C.F.R. Part 404, Subpart P, Appendix I, Section 12.05(C) and Section 2.10(A). (Doc. 11, pp. 10-12) Plaintiff's eligibility to meet or equal the requirements of listing § 12.05 was discussed above.

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). A disability claimant has the burden of establishing his or her RFC. *See Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004). "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009); *see also Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010) (ALJ is responsible for determining RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own description of his limitations).

The Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, a claimant's RFC assessment "must be based on medical evidence that addresses the claimant's ability to function in the workplace." "An administrative law judge may not draw upon his own inferences from

medical reports." *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000). Instead, the ALJ should seek opinions from a claimant's treating physicians or from consultative examiners regarding the claimant's mental and physical RFC. *Id.*; *Strongson v. Barnhart,* 361 F. 3d 1066, 1070 (8th Cir. 2004.)

From a review of the record, it appears that the ALJ failed to taking into account her impairments in combination with one another and the effects they have on her ability to perform work-like tasks in his RFC determination. In a letter dated October 24, 2011, Plaintiff's treating physician, Dr. Monty Baker, a physician at Ear, Nose, & Throat Associates at Mountain Home, indicated Plaintiff did not meet the criteria for listing § 2.10(A). (T. 363) However, Dr. Barker indicated he had been treating Plaintiff since 1990 for her hearing, and her hearing loss had steadily progressed to the severe and profound hearing loss range. (T. 363) Plaintiff had worn hearing aids since early childhood and she continued to utilize them to date. She had difficulty hearing on the phone and when background noises were present. He was unable to test her word recognition at a higher level, due to her inability to tolerate it. Dr. Baker also determined that Plaintiff's hearing loss was progressive. *Id.*

Furthermore, at the beginning of the video hearing it was evident from the ALJ that the Plaintiff had a hard time hearing him. The ALJ had to "crank up the volume" for his overview of the hearing. (T. 29) Even with the volume cranked up, Plaintiff still had difficulty understanding the ALJ and she began to cry. (T. 30-31)

In conducting her evaluation, Dr. Bunting had to speak loudly, even though Plaintiff wore hearing aids and Plaintiff read her lips. (T. 307) Despite Dr. Bunting speaking loudly, Plaintiff continued to have difficulty understanding words. Dr. Bunting also noted there was no evidence of the Plaintiff malingering or exaggerating during her examination. (T. 306-308)

The ALJ stated he considered Plaintiff's hearing impairment and mental impairment, in combination, however, the evidence shows otherwise. Not only did Plaintiff have difficulty hearing the ALJ and Dr. Bunting, she also had difficulty understanding them. (T. 31, 307) Even the disability interviewer at the field office on January 23, 2012, had to repeat herself three to four times for the Plaintiff. (T. 201)

It is evident from the record the ALJ disregarded Plaintiff's treating physician and both state agency medical consultants in assessing Plaintiff's RFC. While the ALJ noted Plaintiff graduated from high school (T. 16), the record was unclear as to whether she received a diploma or a special education certificate. The ALJ also accorded the Plaintiff with the ability to work (T. 16); however, he forgot to mention Plaintiff's testimony regarding the customers getting aggravated because she could not understand them and she had difficulty working with her co-workers. (T. 32) When she asked to be placed elsewhere, the manager did not want her on the floor because she could not hear the intercom and the manager was concerned with her interactions with the customers. (T. 32)

A Plaintiff's residual functional capacity is based on their "ability to perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world." *McCoy v. Schweiker,* 683 F.2d at 1147 (abrogated on other grounds). Plaintiff's residual functional capacity is a medical question, *Lauer*, 245 F.3d at 704, and it appears that when the ALJ made his RFC determination he disregarded the medical evidence and substituted his own opinion for that of the doctors. *See Ness v. Sullivan,* 904 F.2d 432, 435 (8th Cir. 1990) (An "ALJ must not substitute his opinions for those of the physician.") It is apparent the ALJ did not consider Plaintiff's profound hearing loss along with her mental impairments to determine her RFC. Had he consider the combination of the impairments, the Court believes the

ALJ would have reached a different outcome. Thus, the Court finds substantial evidence did not support the ALJ's RFC determination and remand is necessary for the ALJ to reassess his RFC based upon the medical evidence and not his own opinion.

**<u>Vocational Expert:</u>**

While the vocational expert testified that given all of the factors the Plaintiff could perform the requirements of representative occupations such as: hospital cleaner, hand packer, and power screwdriver operator (T. 18, 44), the Court is concerned about the Plaintiff's ability to perform those occupations.

If Plaintiff was not directly facing a person, she could not fully understand them. (T. 32) She could not hear on the phone or when background noises were present. (T. 32) If she had to face someone in order to hear them, and she could not hear when backgrounds noises were present, the Court questions whether she could safely operate a power screwdriver or safely perform the duties of a hand packer. (T. 44)

Moreover, the second hypothetical the ALJ proposed to the vocational expert asked the VE to assume an individual with the same age, education, and work experience as the Plaintiff; the RFC to perform jobs with no exertional limitations, but avoiding jobs requiring excellent hearing capabilities, avoiding jobs that required frequent verbal communication, and avoiding jobs that required telephone communication; and, an ability to perform work where inner personal contact was incidental to work perform. (T. 43) Due to hearing loss, however, the individual would have problems with concentration, persistence, and pace such that the individual would be off task 12 percent of each workday on a consistent basis, and the period of being off task would be in addition to regularly scheduled breaks. (T. 44) The VE, responding to the second hypothetical, testified that

"the individual would not be able to sustain or maintain competitive employment at an unskilled, at an unskilled work environment, therefore there would be no jobs." (T. 45)

Hypothetical questions posed to vocational experts must "capture the concrete consequences of [the] claimant's deficiencies." *Taylor v. Chater,* 118 F.3d 1274, 1278 (8th Cir. 1997). The second hypothetical proposed to the VE contained the findings of Dr. Bunting: Plaintiff had limited capacity to cope with the typical mental/cognitive demands of work-like tasks; very limited ability to attend and sustain concentration on basic tasks; and, Plaintiff's pace was very slow. (T. 307-308) Despite this, the ALJ chose to disregard the VE's testimony based upon Dr. Bunting's medical findings. (T. 17-18) On remand, the ALJ is directed to reconsider the VE's testimony in response to the second hypothetical and explain, if necessary, the basis for discounting or disregarding such testimony.

## IV.   Conclusion:

Based on the foregoing, I must reverse the decision of the ALJ and remand this case to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

Dated this 2nd day of October, 2015.

/s/ Mark E. Ford
HONORABLE MARK E. FORD
UNITED STATES MAGISTRATE JUDGE